Good morning, Your Honors. My name is Russell Handy, and I represent the Plaintiff and Appellant Patricia Lockett. We're here on appeal. We're appealing the District Court's grant of summary judgment to the defendant on this case. The facts are fairly simply laid out. My client is blind. She has a service animal that accompanies her wherever she goes. She went to buy a ticket on the Catalina Channel Express. The facts are pretty undisputed here, I think. So why don't you, since you don't have a lot of time, just jump to your issues. I don't think the clock is working. I still have 10 minutes. Yeah, exactly. So I guess when there's no one here, it's the 10 minutes that last forever. That isn't always a good thing, though. I'll be able to reserve quite a bit. Basically, the judge granted summary judgment for the defense on two legal theories. The facts were undisputed. There's no question that she was denied absolutely the right to sit in first class whatsoever because she had a service animal. Did she actually get on the ferry? She did get on the ferry, yes. So she had to sit in second class seating. And the judge granted summary judgment to the defense under two theories. First, the judge said that the second class seating is very similar. It was an effectively similar experience, and therefore, there was no discrimination here. That was the first ground upon which the district judge granted summary judgment. The second ground the judge ruled was that the direct defense theory applied here. And under the ADA, the only time that you can provide segregated or different facilities or accommodations and actually segregate persons with disabilities is if there's actually a direct threat to the health and safety of other people. It's a very high burden. The Code of Federal Regulations talks about it and lays out the standards. Okay, but let's just assume, let's assume that maybe they aren't exactly the same. Let's not spend time on that right now. But let's assume that you get a, you know, you get a business that's confronted with a situation. I think it's undisputed that they had had a complaint from a regular about a dander problem. Now, we don't know how bad the allergic reaction is or whatever, but on the spot, they have to make a determination. They have, they know they have someone that rides on their ferry that has a dander problem and is allergic, and that then they have your client that has an animal assistance and wants to sit in the room. Why isn't it, when they have this right there, they have to do it on the spot, the ferries, you know, the ferries leaving. And why isn't it reasonable for, at that moment, for them to say, okay, I don't know how bad this person's situation is. I can't really take that chance to have someone go into anaphylactic shock or whatever. We'll put you in the best place that we can put you. And then two weeks later, they change it. I mean, why, why isn't that a reasonable response at that time? Well, here's the problem. You have, let's say there's a conflict. You have my client shows up. She's with a service animal. She wants to sit in the first class area. They have concern from previous passengers who have said there's a problem with danders. Where there's a conflict between a person with a congressionally mandated civil rights to equal access, to be accompanied by her service animal, not to be segregated, where it comes into conflict with someone who may have an allergic response, we don't know, of unknown severity, duration, et cetera, it just seems to me that the person with the civil rights back in here, an entire statute back in here, should trump if there's a conflict. Well, if there's actually people that can go into, I mean, anaphylactic shock, I mean, they could die. I mean, don't think that there wouldn't be a lawsuit about that. If, you know, so you're asking to make it right there. And they do make a favorable determination two weeks later. Why isn't that a reasonable response to give them a little time to look into it? They have no warning of this. If the facts were, well, first of all, the question was presented to them long before my client showed up. The evidence in the record is that there is a quest by an individual. They took it to a committee. They discussed it and thought about it. And they decided, this was a thoughtful process, they decided to take the entire first class section, the entire Commodore Lounge, and exclude any animals whatsoever from that area. Okay, no, but yes, the request for the dander free was. But they don't know earlier that day that they're going to have this conflict, right? That someone might show up with a service animal. Right. Right. I mean, obviously that's, they testify that one to two occasions per year someone will show up with a service animal and be on the board. They don't know that on that day my client's going to show up. That's true. It's just that the policy itself saying that, you know, so you're saying that my client shows up and all of a sudden they present her with a problem. The problem is, is that they're never going to know. No one pre-books these things. They show up and they buy a ticket. You're never going to know when someone with a service animal shows up. And when you have a policy in place that says never, I mean, you will not be allowed to ride first class. But isn't, I guess, isn't accommodation sort of a dialogue in terms of, because you can never anticipate every situation that comes up. And so while I might agree with you that there obviously was a way that they could accommodate both of these people and they figured out how to do that two weeks later. But is everyone going to be required to make the right spot decision without being able to further look into it or they face a lawsuit? I mean. It pretty much works where someone presents themselves and wants to participate in the goods or services or accommodations. And they say, what, you have a policy that would exclude me from there? Then they make a request. And if we were to, and it seems pretty clear that when they make a request they are on the spot. They have to make a decision. Do we honor this request? Do we accommodate this person with a disability or not? And we know in this case they did change their policy two weeks later. That's all they did was remove the policy. They didn't rearrange the vote at all and never had a problem again. And so our issue was on a summary judgment standard where the judge ruled against us and said there is no legitimate jury, no reasonable jury could return a verdict in our favor under this direct threat defense, under the reasonable accommodation. These are usually tribal issues. And the judge took this case away from us and said it's uncontroverted that there was a direct safety threat to other people. We know the standard very high. There was no facts to support it. Well, counsel, other than your opinion that your client's rights trump the threat to safety, is there any statutory support for that position? There is. If someone is going to be, if they're going to use a direct threat defense, if they're going to say we have this policy, although it tends to exclude an entire class of persons, persons with service animals, it's nonetheless necessary because we have to protect the health and safety of our other passengers. The standard under the Code of Federal Regulations, it lays it out, there has to be an individualized assessment based on objective evidence using current medical knowledge and it has to deal with the nature, duration, severity and probability of the risk. It's such a high standard these factors have to be in there. They could make it if they show that here's our person, she really does have a risk threat, if there's a dog that comes on board. But this type of evidence which gets amassed, you know, before a trier of fact, there's nothing in the record. We don't even know the name of this passenger who possibly showed up or the nature of her verdict. Would she have sniffles? Would she actually have a threatened anaphylactic shock? No evidence at all. And you're asking the ticket agent to make that very substantial determination on the spot or face liability. That's your position. What we're asking is that, what we're challenging is there a policy that said no service animals, even if accompanied by a, even an animal accompanying a person with a disability, none of them has access to the first class lounge. That was the way they dealt with this concern about dander. That was an inappropriate way to deal with it. It was a decision that was made beforehand. They created the circumstances where they have someone showing up and they go, what do we do now? We have a policy that totally segregates persons with disabilities. We take an entire class, first class, and we remove it from any person that's accompanied by an animal and then they have a situation where, yeah, they've created a situation where it's an on-the-spot decision. But they never should have done that. It seems to me, counsel, that you've got on your side that your client was denied peanuts, a leather seat, and a drink versus someone who has advised them, apparently you challenged this, but the record maintains that this person had a dander reaction, which was a serious medical injury. Isn't that what we're balancing at that time? Well, the first thing is that that's actually not the undisputed fact, a serious medical threat or anything like that, just a sensitivity to allergies. That's it. That's the only thing in the record. So when we're balancing this thing, you're right. There's the first class section, which has the leather seats. This is an hour trip. They have leather seats, reclining seats. People pay more for it. They have pre-boarding options. They pay $10 for it. That's right. I mean, the whole ticket's not expensive, so it's like a 50% or 75% upgrade from the original ticket. We're not talking big dollars anyways. But, I mean, this is an hour trip both ways. And people pay for that. They have pre-boarding priority. We'll give you that. I want to know how they're going to balance this. I mean, it seems to me that to engage in the kind of balancing that you're talking about that they should make, that they need an opportunity to do that. Yeah, I think what they did after my client complained is how they do it. And it shows that that policy was not necessary. They just removed it. The animals are allowed on there now. They don't have any policy that restricts service animals or animals from first class at all. And at the time the deposition was taken, at the time that the record was created, it had been 13 months with the new policy and not a single complaint, not even from that frequent passenger. And so it just shows that there was no necessity to have that policy in place. It was not necessary to protect the health and safety of another passenger. They had this policy in place. It was an unfortunate policy that tended to exclude an entire class of persons from the entire first class seating area. And that's the thing about the ADA. I understand sometimes it's a tough decision. How do we weigh the rights of a person who might have an allergy response against a person who's seriously disabled and is accompanied by a service animal? But the ADA says you cannot create segregated accommodations or facilities. It's illegal to say this entire class of people will not be allowed on the first class seating area. That's just not under the ADA, under the plain language. Would you concede if it was known that someone had an anaphylactic type of, that they would go into a point where they couldn't breathe, all of that, would you concede that under those circumstances, if that were what they were confronted with, their summary judgment would be appropriate? I would agree that if those facts were developed. I know they're not the facts here, but. I would agree if there was a. If those were the facts here. If accommodating my client and letting her go into the first class area would create that kind of a risk for a passenger there that day, anaphylactic shock, I would agree that there probably would be grounds for invoking the direct defense threat. Okay. I have a question. Did you start him at ten minutes? Okay. You're really over, but I'm going to give you one minute for rebuttal, okay? Thank you. Because you were about two minutes before he came in. Thanks. Thank you. Good morning. My name is Peter Forgay. I represent Catalina Channel Express. Good morning. The problem we have, and Your Honors have appropriately pointed it out, is we've got a real-world situation that is trying to be judged in hindsight. We have people that are running what effectively amounts to a bus service over to Catalina. It's the only significant service over there. They're called upon to accommodate one of their frequent travelers, their regular passengers, who has complained to them about a specific problem. The best and only thing that they can do to accommodate this frequent traveler who has complained about her allergy to pet dander is to segregate this area from pets. That is the only thing they can do. A vessel is a very limited space item, and you can't simply do whatever you want. This is all they could do. Now they're in a situation skipping ahead to a lawsuit where, in hindsight, someone has been called upon to judge the conduct of these people that sell tickets. To rule in favor of the plaintiff and appellant here would require, in effect, a service such as Catalina Channel Express to do a complete medical analysis and balance the interests of a person who has complained of an allergy versus a competing interest of a variety of disabilities. What's wrong with that? Because it places a difficult burden at the inception on people that aren't necessarily able to make that assessment. What they did is judge the entire array of services that could be provided, and I believe assessed that the difference between the Commodore Lounge and the regular passenger area was of not such a consequence as to prohibit what their on-the-spot decision was about trying to accommodate competing interests. Well, counsel, it seems to me one of the advantages of the ADA is that it heightened a business owner's awareness, the need to accommodate passengers with disabilities. So your client knew that it was going to be excluding all service animals. And is it too much to ask at that point that you engage in this balancing act, which apparently you did afterwards and have reached an accommodation that seems to be working? That's true. In hindsight, that's true. But to place the burden on them to determine the nature of the person's allergic response to essentially ask for their medical records or go speak with their doctor to determine on the array of possible allergic responses whether sniffles, as they say, could have occurred versus shock is placing that burden on people that are completely incapable of making such a judgment. Okay, but they did go through a process before that date where they determined a policy. And I think what Appellant is saying in that process, they really didn't, you know, that's where they should have been discussing all of this. And they took a blanket policy that no service animals in the Commodore Lounge, knowing that probably at some point, you know, there would be someone that would come on with a service animal. And so when they were deliberating on the process, they didn't come to the same conclusion that they came to two weeks later. So, you know, why? Squeaky wheel gets the grease, I think, is really what it comes down to. They were doing their best to respond to the complaints of people that were presented to them at the time. And you're obviously, we're dealing with a situation that underscores our point that they're doing their best to accommodate the competing interests. And with the frequent traveler, they were trying to accommodate her, and the only means they could possibly do that. And then when Ms. Lockett comes along, although she actually did go to Catalina and come back and had a wonderful time, she nevertheless calls them up two weeks later and raises a stink about the whole thing. Well, would you, I think the district court said the accommodations were pretty close. Would you agree that the public area is a lesser area to the Commodore? No, in all honesty, no. I mean, truly, this Commodore Lounge is effectively, the only difference between it and the larger passenger area, which has perfectly comfortable seats, obviously the same views. You're looking out at Port or Starboard. The only thing that's different is the seats recline and someone gives you a free cookie. Well, what about if, let me play the devil's advocate here, if you're disabled, you know, having to walk around and go get your, you know, you don't really get a free cookie because you pay. But what about if you are disabled, you know, getting up and having to, you know, work your way around the, you know, and have to go buy it, have to carry it, then have to go sit back down. I mean, that could be hard on someone that's disabled. That's true. So that could be an advantage of the Commodore Lounge to someone. Hey, I get on there. I can sit down. I can have my drink and cookie. I don't have to take any further risks. And, you know, people that have service animals, I don't know all the reasons that people have them, but she had a vision issue, right? A limited vision. But, you know, when you can't see very well, you know, getting up and having to wander around in unknown territory sometimes subjects you to a little more treachery. And the real world takes that into consideration. If you're an elderly person and you're on that boat and it's a bad day at sea and you have a problem walking around, then I can assure you that the stewardesses, stewards, come to you and take that into consideration, even in the regular passenger area and bring you coffee or whatever you need. That's the real world. And that's the situation that existed. And so what my point is with respect to the accommodations, they are substantially identical. They really are. And I think that Catalina Express took that into consideration in judging whether it was appropriate to accommodate the competing interests in favor of the woman with allergies who was a frequent traveler living in Catalina. I'll submit it on that, if you have no questions. Thank you. Just briefly, one of the problems here, of course, is that Catalina Channel Express is, in one sense, is speaking out of both sides of their mouth. They're bragging on their website about this great upgrade. They're charging more. They're calling it first class. They are offering different accommodations. The testimony of their corporate representative, Dwayne Kapp, and it's in the record, he calls it advantages. The judge called it special features. It is something different. But the bottom line, of course, is that this separate but equal argument was rejected with Brown v. Board of Education. It's inherently unequal. It's just not appropriate. Under the ADA, the plain language, you're just not allowed to segregate. You can't say the back of the bus is the same as the front of the bus. You're going to the same place. You're sitting on very similar seats. You have the same view out the right side and left side. That argument just doesn't fly anymore in the world of civil rights. It doesn't fly here specifically because the ADA has a specific statutory section that says separate or different facilities is illegal unless you can establish the direct defense threat. And that hasn't been done in this case. It's certainly not to reach a summary judgment standard. If they want to develop that defense, they certainly can at trial. But we would ask this Court remand it and allow us to prove up this case. All right. Thank you both for your argument. What do you think of mediation in this case? I can speak frankly. We've tried mediation. We even had the Ninth Circuit mediation, but the defense feels fairly strongly about their case. And I think that this ruling is very important to see where we go from here. Is that correct? We did participate in mediation. We each have our own views about whether we were being reasonable. Money was offered. Money was demanded. And we could not bridge the gap. Okay. Thank you. Thank you. This matter will stand submitted. The next case on calendar is Latrice Dixon v. City of Long Beach, 05-201.
judges: Hall, Callahan, Robart